# UNITED STATES DISTRICT COURT
for the
Eastern District of California

FILED
JUL 10 2015
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK



| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Maria Candelaria Garcia, | ) Case No. |
| | ) |
| | ) 1: 15 MJ 0 0 0 9 8 SKO |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____July 10, 2015____ in the county of ____Fresno____ in the ____Eastern____ District of ____California____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 1344 | Material Witness in a Criminal Case |

This criminal complaint is based on these facts:

See Attached Affidavit of Special Agent Sean Manning, which is incorporated herein by reference.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Sean Mannnig, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 10, 2015

_____
*Judge's signature*

Lawrence J. O'Neill, U.S. District Judge
*Printed name and title*

City and state: ____Fresno, California____

## I.   AFFIDAVIT

I, Sean Mannig, being first duly sworn under oath, depose and say:

1. I am presently employed by the United States Drug Enforcement Administration, San Francisco Field Division, and have been so employed since 2010.

2. This Affidavit is made in support of a request for the issuance of a Warrant for the Arrest of a Material Witness, Maria Candelaria Garcia, aka Nancy Magana Moreno, pursuant to Title 18, United States Code, Section 1344.

3. I have received the following information from my own personal knowledge and participation in this investigation, and oral and written reports by other law enforcement officers who have personal knowledge of the matters described below. I have also personally reviewed the reports in this matter. It is not intended to include each and every fact known and matter observed to be or known to the government.

## II.   STATEMENT OF PROBABLE CAUSE

4. Agents of Mountain and Valley Marijuana Investigation Team (MAVMIT) began an investigation into a methamphetamine trafficker Daniel LNU, using the identity Jose Ernesto VALENCIA (hereinafter Daniel). Daniel is currently facing charges in case number 1:13-cr-175 LJO-SKO in this Court and scheduled for trial on July 21, 2015.

5. Agents of MAVMIT received information from Confidential Source 1 (CS1)[1] regarding a methamphetamine broker known to CS1 as Susanna GOMEZ (hereinafter GOMEZ), who was in contact with Daniel, a methamphetamine trafficker. CS1 informed MAVMIT agents that GOMEZ was in contact with a man (Daniel) who was able to provide multiple pounds of methamphetamine. CS1 informed agents that CS1 would be able to purchase an ounce sample of methamphetamine from GOMEZ and negotiate a ten (10) kilogram methamphetamine transaction, following the ounce purchase. CS1 believed that the negotiations would take place with GOMEZ negotiating the deal between CS1 and ALVAREZ.

///

---

[1] CS1 is a paid informant.

Affidavit in Support of Warrant for Arrest of Material Witness, 18 USC 3144                                  1

6. On March 5, 2013, CS1 negotiated to purchase one (1) ounce of methamphetamine from GOMEZ and Daniel. CS1 told GOMEZ that CS1 was negotiating for another party, Confidential Source 2[2] (hereinafter CS2). Gomez told CS1 that Daniel would be willing to sell the ounce sample for $1,000. CS1 told GOMEZ that if the sample was good then CS1's buyer (CS2) would purchase ten (10) kilograms of methamphetamine the following day.

7. On March 7, 2013, agents of MAVMIT provided CS1 with $1,500 of photocopied, US currency and briefed CS1 on his/her role. CS1 was equipped with an audio transmitting device that was monitored and recorded by a Spanish speaking agent. Later the same day, GOMEZ picked up CS1 at a McDonald's restaurant in El Dorado Hills California and drove to a Taco Bell, located at the corner of Hurley Way and Howe Ave. in Sacramento, California. There GOMEZ contacted Daniel who later arrived in a black Ford Explorer. Daniel met with CS1 and told CS1 that the price for the one ounce sample would be $800. CS1 gave Daniel $800 in recorded US currency that agents previously provided to CS1. CS1 and Daniel negotiated the terms of the purchase of 10 kilograms of methamphetamine. Daniel told CS1 that he would have to see all of the money before providing CS1's buyer with any portion of the 10 kilograms. Daniel appeared skeptical that CS1's buyer had the money. CS1 provided GOMEZ and Daniel a picture of approximately $100,000. Daniel observed the picture, said it looked good, and the deal would happen. Daniel made it clear that he needed two hour notice because he had a portion of the methamphetamine at his house and another portion at a friend's house.

8. Daniel told GOMEZ and CS1 that he would go get the sample and return to provide it to CS1. Agents followed Daniel to 400 Kesner Ave, Sacramento, where he parked in front of a single family home and entered the front door. Shortly after, agents observed Daniel back a Chevy Tahoe from the garage of 400 Kesner Ave, and followed him back to the intersection of Howe Ave and Hurley Way. At this time, agents observed Daniel give GOMEZ a white Taco Bell cup. GOMEZ took the cup and gave it to CS1. CS1 noted that the cup contained approximately ounce of methamphetamine. Agents later took possession of the methamphetamine and subsequently field tested and weighed the methamphetamine. The results of the test were presumptive positive with a weight of 30.1 grams.

---

[2] CS2 is a paid informant.

Affidavit in Support of Warrant for Arrest of Material Witness, 18 USC 3144

2

9. On March 8, 2013, agents established surveillance at 400 Kesner Ave, Sacramento. Agents met with CS1 and CS2, who would pose as CS1's buyer. Agents conducted an operations briefing and followed pre-operation procedures. CS2 was provided an audio transmitting device that was monitored and recorded by a Spanish speaking agent. At 0955 hours, CS1 received a phone call from GOMEZ. GOMEZ told CS1 that Daniel wanted to see and take possession of the money before he delivered the methamphetamine. Approximately an hour and a half later, CS1 was directed to call GOMEZ and have her meet with CS1 and CS2. Shortly after, agents observed GOMEZ exit 400 Kesner Ave, and drive a gray Nissan Altima from in front of 400 Kesner Ave. into the garage and close the garage door. At approximately 1207 hours, agents directed CS1 to contact GOMEZ and tell her the CS1 and CS2 were ready to meet. Approximately 2 minutes later, agents observed GOMEZ and Daniel leaving 400 Kesner Ave. GOMEZ was driving the Nissan Altima and Daniel was driving the Chevy Tahoe. Agents observed Daniel and Gomez park at the meet location. GOMEZ met with the CSs while Daniel watched.

10. GOMEZ made several phone calls to Daniel assuring him that the deal was safe and he could trust CS1 and CS2. Daniel told GOMEZ that he would need the money before delivering the methamphetamine. The CSs refused those terms. Agents observed Daniel drive his Tahoe from the meet location to a parking lot across the street. Minutes later, agents observed GOMEZ drive across the street and meet with Daniel. Approximately 10 minutes later, agents observed Daniel and GOMEZ leaving the parking lot in their respective vehicles. At about the same time, CS1 received a phone call from GOMEZ informing CS1 that they were going to get 4-7 pounds of methamphetamine. GOMEZ told CS1 that she would call back to let CS1 know exactly how much so that CS1 could prepare the money. At approximately 1315 hours, CS1 called GOMEZ. During this call, GOMEZ told CS1 that she would deliver 4 pounds of methamphetamine for the price of $22,000. GOMEZ told CS1 that after she received the $22,000, Daniel would send her to pick up 26 pounds of methamphetamine in Modesto and bring it back to Daniel in Sacramento. Approximately 5 minutes later, agents observed Daniel and GOMEZ return back to 400 Kesner Ave. At approximately 1333 hours, GOMEZ called CS1 and said that she would bring CS1 four (4) pounds and to prepare the money. Minutes later agents observed GOMEZ as she drove from 400 Kesner Ave, in the Nissan. At approximately 1400 hours, GOMEZ met

with CS1 and CS2 at which time the predetermined arrest signal was given. Agents took GOMEZ into custody and found approximately 4 pounds of methamphetamine hidden in a shopping bag in the back seat of the Nissan. The methamphetamine was found in a plastic container and two clear plastic bags.

11. At approximately 1424 hours, agents had followed Daniel to Del Paso Heights elementary School, where they took him into custody. At approximately 1432 hours, agents executed a state search warrant at 400 Kesner Ave. During the search agents found approximately 1.5 ounces of methamphetamine packaged for sale, a functioning kilogram digital scale, packaging materials including plastic wrap, rubber bands, and engine grease. Agents also found indicia in the name of Jose Valencia and $1,541.00 in US currency in Daniel's wallet. Agents were able to determine that six bills found within the wallet were recorded funds from the purchase of the one ounce sample the previous day.

12. During the prosecution of this case, I am informed that Daniel's attorney requested CS1's presence at trial. To that end, I have been in touch with CS1. On or about June 22, 2015, I was informed by CS1 that a defense investigator had located her residence. This concerned CS1 but she agreed to testify at the trial. Since that time, CS1 has failed to maintain contact. I spoke with CS1 again on July 8, 2015 and informed her that she needed to meet with me and was needed at the trial of this action. We agreed to meet at 10:00 a.m., on July 10, 2015. CS1 has neither shown up for the meeting, called me, or answered telephones calls made to determine where she is and why she failed to appear. I believe that CS1 is attempting to avoid appearing for trial in this matter but she has resisted attempts to provide her with a sub pena. As such, I believe that this warrant is necessary to ensure her appearance at court proceedings in case number 1:13-cr-175 LJO.

### III. CONCLUSION

13. I believe that based upon the information contained herein, that the testimony of Ms. Garcia is material in the case of 1;13-cr-175 LJO, and that it is impracticable to secure her appearance by subpoena given her role in the offense, and her failure to cooperate with law enforcement in this case since Daniel's arrest. Therefore, I request that the Court order her arrest and treat her in accordance with the provisions of Title 18, United States Code,

///

///

1  Section 3142. I declare under penalty of perjury that the facts contained herein are true and correct to
2  the best of my knowledge and belief.

   Sean Manning, Special Agent
   United States Drug Enforcement Administration

   SWORN TO BEFORE ME, AND SUBSCRIBED
   IN MY PRESENCE THIS 10 DAY OF
   July, 2015.

   Honorable Lawrence J. O'Neill
   U.S. District Judge

Affidavit in Support of Warrant for Arrest of        5
Material Witness, 18 USC 3144